Opinion

 Mr. Stephen A. Stefanski 90-A-1 PUBLIC FUNDS CONTRACTS
 Edwards, Stefanski Zaunbrecher, LLP La.Const. art. 7, Sec. 14, La.C.C. art. 2668, La.C.C.
 Post Office Drawer 730 art. 2679, La.R.S. 33:4711, La.R.S. 41:211, et seq.
 Proposed Cooperative Endeavor Agreement between
 Crowley, Louisiana 70527-0730
 the Acadia Parish Police Jury and the American Legion
 Hospital violates La.Const. art. 7, Sec. 14, La.C.C. art.
 2668, La.C.C. art. 2679, La.R.S. 33:4711, and La.R.S.
 41:211, et seq.

Dear Mr. Stefanski,
On behalf of the Acadia Parish Police Jury, you have requested an opinion regarding a proposed cooperative endeavor agreement between the not-for profit American Legion Hospital (the "Hospital") and the Acadia Parish Police Jury (the "Police Jury") for the purpose of constructing a trauma center adjacent to the already existing Hospital.
According to your request, the Hospital intends to make improvements to its facility with the addition of a new trauma center and health unit. Because the Police Jury is a public entity, it has the ability to seek state and federal funding which the Hospital is ineligible to seek on its own. Based on your letter, the need for an updated trauma center is to provide the people of Acadia Parish "healthcare in a safe environment during emergency hurricane situations." You state that the current hospital building is insufficient to provide emergency medical care to the residents of Acadia Parish in the event of an emergency such as a hurricane.
According to a resolution enclosed with your request, the rights and duties of the Hospital and Police Jury under the proposed cooperative endeavor agreement would be as follows: a new medical complex (trauma center) would be constructed by the Police Jury with funding secured by the Police Jury. After construction, the building would be owned by the Police Jury. It would be built on land adjacent to and owned by the Hospital. The land would be leased by the Police Jury from the Hospital. The entire building constructed by the Police Jury (minus a portion of the building which would be used as the Acadia Parish Health Unit) would be leased from the Police Jury to the Hospital. The trauma center would be administered and staffed by the Hospital. Included in the new building would be the Acadia Parish Health Unit, to be administered and staffed by the *Page 2 
Police Jury.[1] Maintenance on all equipment in the trauma center would be the Hospital's responsibility while building maintenance would be the responsibility of the Police Jury.
The cooperative endeavor agreement included with the opinion requests references two leases. Our office has neither seen nor reviewed the lease documents, but with regard to the lease of the land by the Hospital to the Police Jury, the cooperative endeavor agreement provides:
American Legion Hospital to provide through a fully paid up one hundred year lease, in favor of Acadia Parish Police Jury, suitable land adjacent to American Legion Hospital. The lease would be at no cost to Acadia Parish Police Jury.
With regard to the lease of the building by the Police Jury to the Hospital, the cooperative endeavor agreement provides:
The building and contents will be leased from the Acadia Parish Police Jury to American Legion Hospital for one hundred years, the condition being that the Hospital will administer and staff the facility.
You have asked our office to review the proposed agreement to determine whether it is permissible under La.Const. art. VII, Sec. 14.
Cooperative endeavor agreements, such as the one the Police Jury intends to enter into, are authorized by La.Const. art. VII, Sec. 14(C), which provides:
For a public purpose, the state and its political subdivisions or political corporation may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual.
Section (C) merely supplements the prohibition against gratuitous donations contained in section (A) of La.Const. art. VII, Sec. 14. It does not create an exception to or exemption from the general constitutional norm. Therefore, even though the expenditure of public funds and transfer of public property is being done pursuant to a cooperative endeavor agreement, the expenditure still must be examined in light of La.Const. art. VII, § 14(A) which provides in pertinent part, as follows: *Page 3 
Section 14(A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private . . .
This constitutional provision is violated "when public funds or property are gratuitously alienated." Board of Directors of theIndustrial Development Board of the City of Gonzales, Louisiana,Inc. v. All Taxpayers, Property Owners, Citizens of the City ofGonzales, et al., 2005-2298 (La. 9/6/06), 938 So.2d 11, 20 (the"Cabela's" case). Based on the standard articulated in Cabela's,
it is our opinion that in order for an expenditure of public funds to be permissible under La.Const. art. VII, Sec. 14(A), the entity spending the funds must have the legal authority to so do and must be able to show: (i) a public purpose for the expenditure or transfer that comports with the governmental purpose for which the public entity has legal authority to pursue; (ii) that the expenditure or transfer, taken as a whole, does not appear to be gratuitous; and (iii) that the public entity has a demonstrable, objective, and reasonable expectation of receiving at least equivalent value in exchange for the expenditure or transfer of public funds.
Ensuring that citizens of Acadia Parish have adequate access to emergency care is certainly a public purpose. However, when applying the second and third prongs of the Cabela's analysis to your proposed cooperative endeavor agreement, (i.e., that the expenditure does not appear to be gratuitous and that the public entity expects to receive equivalent value for the public funds it spends) we have some concerns. Although not completely gratuitous, the terms of the cooperative endeavor agreement, as currently written, do not seem to demonstrate that the Police Jury can have any reasonable expectation of receiving equivalent value for the public funds it will spend on this project.
As noted above, the Police Jury would be incurring the cost to construct a trauma center for a private, not-for profit hospital. The lease provisions in the resolution accompanying your request state that the rent paid to the Police Jury for use of the building would be that "the Hospital will administer and staff the facility." No money would exchange hands.[2] The "rent" that the Police Jury expects to receive is in the form of services: the private hospital would administer and staff *Page 4 
its own trauma center, and would maintain its own equipment. We note that these are services the hospital would provide regardless of whether there was a cooperative endeavor agreement in place. This is not something the Police Jury would have otherwise done and cannot be considered of any significant value, much less equivalent value. The compensation paid to the Police Jury must reflect fair market value in order to avoid running afoul of La.Const. art. VII, Sec. 14. La. Atty. Gen. Op. No. 09-0303.
With regard to the lease of land by the Hospital to the Police Jury, your opinion request notes that "if a lease arrangement is not possible, the Hospital would consider donating a portion of the property to the Police Jury." The donation of the property by the Hospital to the Police Jury would provide some quantifiable value that could be used to determine whether the Police Jury was receiving equivalent value for the funds it would spend constructing the trauma center and undertaking the other obligations set forth in the cooperative endeavor agreement. However, an appraisal of the land would be required to know exactly what value should be assigned to the donation of the land from the Hospital to the Police Jury.
It further appears that the Police Jury has greater liability from the cooperative endeavor agreement because we cannot find any provision in the cooperative endeavor agreement that sets forth the value the Police Jury would receive for assuming the responsibility for building maintenance. Therefore, in addition to ensuring that the Police Jury is receiving something of equivalent value, we would further recommend the Police Jury include some indemnity language in order to protect itself in the event it is sued for accidents that happen in this parish-owned, but privately operated building.
Thus, when considering this project under the lens of La.Const. art. VII, Sec. 14, there are serious concerns as to whether, as currently written, the Police Jury is receiving equivalent (or any) value for the money it will spend and other obligations it will incur during the term of the cooperative endeavor agreement. It is true that the citizens of Acadia Parish will benefit from the cooperative endeavor agreement by having a new trauma center available to them (though at their own cost). However, the inability to quantify this benefit must be considered when the Police Jury examines the reciprocal obligations it and the Hospital will undertake and makes the determination as to whether it is receiving equivalent value for the public funds it will spend.
In addition to the concerns noted above relating to La.Const. art. VII, Sec. 14, we are also concerned about the Police Jury's authority to lease the building to the Hospital. Police juries are authorized to lease property per La.R.S. 33:4711, which provides: *Page 5 
Police juries may sell, lease, or exchange with private persons or other political corporations of this state any property owned by the Police Jury or the parish, when such property is no longer needed for public purposes; and police juries may grant to municipalities within their respective parishes portions of roads, streets, alleys, or other public ways which may lie along and parallel or approximately parallel to any boundary of any municipality in such manner as to be partly in the municipality and partly outside of the municipality; provided such transfer shall have no effect until accepted by the municipality to which it is made (emphasis added).
In order to construct the trauma center, the Police Jury will first have to show that the property is being acquired for a public purpose in order to comply with La.Const. art. VI, Sec. 23. This constitutional provision permits political subdivisions to "acquire property for any public purpose by purchase, donation, expropriation, exchange, or otherwise." Then, in order to turn around and lease a majority of the building to the private hospital for use as a trauma center as permitted by La.R.S. 33:4711, the Police Jury must determine that the building is no longer needed for public purpose. These are mutually exclusive, contradictory goals.
In La. Atty. Gen. Op. No. 01-45, the Vermilion Parish Police Jury asked whether they could acquire a lot and building that was owned by a bank and, at the same time, enter into a long term lease with the bank so that the bank may continue to use a portion of the building and operate a drive-thru banking service. The opinion concluded that "[i]f the Police Jury was to acquire this particular lot and building and then turn around and lease a portion of it as no longer needed for a public purpose, they would appear to be clearly admitting that a portion of this lot and building was never needed for a public purpose in the first place. Since public funds may not be used to purchase property except for a public purpose, we are of the opinion that the Police Jury may not use La.R.S. 33:4711 to lease a portion of this building and property to the bank." We have the same concern when considering the facts presented in your request; specifically, the difficulty reconciling how the Police Jury will first determine that the building is being constructed for a public purpose and then immediately determining it is no longer needed for a public purpose and should be leased.[3] Finally, we note that in order to lease the property, the public lease law must be followed. La.R.S. 41:1211, et seq. *Page 6 
In sum, it is our opinion that based on the facts provided to us, the proposed cooperative endeavor agreement does not comply with La.Const. Art. VII, § 14, La.Const. Art. VII, § 23, La.R.S. 33:4711 and La.C.C. Art. 2679.
We trust this adequately responds to your request. However, if our office can be of further assistance, please do not hesitate to contact us.
[1] Although unclear from your opinion request, we assume that the portion of the trauma center that would be used to house the Acadia Parish Health Unit would be very small compared to the portion of the building that would be used to house the trauma center operated by the Hospital.
[2] In order to have a valid lease, "the consent of the parties as to the thing and the rent is essential but not necessarily sufficient for a contract of lease." La.C.C. art. 2668. The rent may consist of money, commodities, fruits, services, or other performances sufficient to support an onerous contract. La.C.C. art. 2675. However, "the rent for a lease must be serious and not at all out of proportion to the property's value." Arnold v.Board of Levee Com'rs of Orleans Levee Dist., 366 So. 2d 1321
(La. 1978). If no money is being paid to the Police Jury for the Hospital's right to use the building, and the only value is the Hospital agreeing to staff and run the facility (which it will be doing anyway), a court may conclude that the rent is out of proportion to the property's value, violating La.Const. art. VII, Sec. 14 and possibly general lease law. Further, the proposed leases are for one hundred year terms, whereas, under Louisiana law, the term of a lease cannot be greater than 99 years. La.C.C. art. 2679.
[3] But see La. Atty. Gen. Op. No. 10-0047, wherein this office opined that the St. Martin Parish School Board could purchase a building located on its property for school board use and lease a portion of the building to a nonprofit agency. This opinion distinguished itself from La. Atty. Gen. Op. Nos. 89-149 and 01-0045 because in those opinions "the predominant cause for purchase of the subject properties was the lease to a nongovernmental entity" whereas in the facts presented in Opinion 10-0047, the predominant cause for purchasing the building was for use by the school board.